AO 106 (Rev. 04/10) Application for a Search Warrant



FILED
FEB 27 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## for the
## Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.
LG Model: LG-VS425LPP cellular phone )
and six other cellular phones )            **18MJ0938**
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii) | Transportation of certain aliens |
| 8 U.S.C. § 1324(a)(1)(A)(v)(I) | Conspiracy to do the same |

The application is based on these facts:

See attached affidavit of Jason Chuba.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jason Chuba, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/27/18

*Judge's signature*

City and state: San Diego, California          Hon. Mitchell D. Dembin, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A
PROPERTY / ITEMS TO BE SEARCHED

The property / items to be searched are described as:

1. LG Model: LG-VS425LPP
   Serial Number: 711VTSM1883278
   IMEI: 358402088802927
   Abandoned phone believed to have been used by Jimmy Hernandez (HERNANDEZ)
   (herein referred to as **TT #1**);

2. AXON ZTE
   Model: ZTE B2017G
   FCC ID: SRQ-ZTEB2017G
   Abandoned phone believed to have been used by HERNANDEZ
   (herein referred to as **TT #2**);

3. Apple iPhone
   Model: A1662
   FCC ID: BCGF2945A
   IMEI: 355437076207401
   Believed to belong to HERNANDEZ
   (herein referred to as **TT #3**)

4. Apple iPhone
   Model: A1687
   FCC ID: BCG-E2944A
   IC: 579C-E2944A
   Believed to belong to Sabrina Marie Solano (SABRINA)
   (herein referred to as **TT #4**)

5. Apple iPhone
   IMEI: 352018074387115
   Believed to belong to Marcos Solano Jr. (SOLANO)

(herein referred to as **TT #5**)

6. Blue Tech Cell phone
   Serial Number: 2017090707890
   IMEI 1: 351923071058786
   IMEI 2: 351923071058794
   Believed to have been used by material witnesses Florencia Cuellar-Garcia and Hermenegildo Santiago-Garcia
   (herein referred to as **TT #6**);

7. Alcatel
   FCC ID#: 2AC0JHD12
   IMEI: 014649001834520
   Believed to belong to material witness M.V.
   (herein referred to as **TT #7**).

The items are currently in the possession of the United States Department of Homeland Security ("DHS"), being held in Chula Vista, California.

## ATTACHMENT B
EVIDENCE TO BE SEIZED

Authorization to search the cellular phones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular phones. The seizure and search of the cellular phones will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular phones will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period from **January 1, 2018 to and including January 27, 2018**:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

   a. tending to indicate efforts to smuggle illegal aliens into the United States from Mexico for transportation;

   b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to smuggle aliens into the United States and transport them therein;

   c. tending to identify co-conspirators, criminal associates, or others involved in efforts to smuggle illegal aliens into and through the United States;

   d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

   e. tending to identify the user of, or persons with control over or access to, the subject phone; or

   f. tending to place in context, identify the creator or recipient of, or establish

Page 1 of 2

the time of creation or receipt of communications, records, or data above;

**which are evidence of violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (v)(I), Transportation of Certain Aliens and Conspiracy to commit the same.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above. 8

FILED
FEB 27 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT

I, Jason Chuba, being duly sworn, declare and state:

## INTRODUCTION

1. This affidavit is made in support of an application to search the following cellular phones:

    a. LG Model: LG-VS425LPP
       Serial Number: 711VTSM1883278
       IMEI: 358402088802927
       Abandoned phone believed to have been used by Jimmy Hernandez (HERNANDEZ)
       (herein referred to as **TT#1**);

    b. AXON ZTE
       Model: ZTE B2017G
       FCC ID: SRQ-ZTEB2017G
       Abandoned phone believed to have been used by HERNANDEZ
       (herein referred to as **TT#2**);

    c. Apple iPhone
       Model: A1662
       FCC ID: BCGF2945A
       IMEI: 355437076207401
       Believed to belong to HERNANDEZ
       (herein referred to as **TT#3**)

    d. Apple iPhone
       Model: A1687
       FCC ID: BCG-E2944A
       IC: 579C-E2944A
       Believed to belong to Sabrina Marie Solano (SABRINA)
       (herein referred to as **TT#4**)

    e. Apple iPhone
       IMEI: 352018074387115

Page **1** of **10**

        Believed to belong to Marcos Solano Jr. (SOLANO)
        (herein referred to as **TT#5**)

    f. Blue Tech Cell phone
       Serial Number: 2017090707890
       IMEI 1: 351923071058786
       IMEI 2: 351923071058794
       Believed to have been used by material witnesses Florencia Cuellar-Garcia and Hermenegildo Santiago-Garcia
       (herein referred to as **TT#6**);

    g. Alcatel
       FCC ID#: 2AC0JHD12
       IMEI: 014649001834520
       Believed to belong to material witness M.V.
       (herein referred to as **TT#7**);

(collectively **Target Telephones**) further described in Attachment A.

    2. The purpose of the search warrant is to search and seize evidence of crimes, specifically violations of Title 8, United States Code, Section 1324, including Transportation of Certain Aliens and Conspiracy to do so, further described in Attachment B.

    3. The **Target Telephones** are being held as evidence by the United States Border Patrol (USBP) in the Southern District of California.

    4. The following is based on my personal involvement in this investigation, oral and written reports about this investigation that I have received from federal, state, and local law enforcement officers, physical surveillance conducted by law enforcement, whose observations have been reported to me either directly or indirectly, law enforcement record and intelligence checks, conversations with other law enforcement agents involved in this investigation, and my review of records obtained during this investigation. Since this affidavit is for a limited purpose, I have not included

every fact I know about this investigation. I set forth only facts necessary to establish foundation for the requested warrant. Dates and times are approximate.

## BACKGROUND AND EXPERIENCE

5. I have been employed by the USBP since April 2, of 2009, and am currently assigned to the Boulevard Station Abatement Team (SAT). SAT is tasked with the responsibility of investigating, arresting, and prosecuting members of criminal smuggling organizations who violate alien smuggling and narcotics smuggling laws among other federal violations.

6. During my tenure as a Border Patrol Agent (BPA), I have participated in the investigation of a number of criminal smuggling organizations, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants and the indictments of persons for alien and narcotics smuggling to include load drivers, foot guides, and load house operators.

7. In the course of my duties, I investigated and prepared cases for prosecution against persons involved in the inducement of illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; the transportation and harboring of undocumented aliens within the United States; and the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by undocumented aliens to illegally gain entry or remain in the United States.

8. Through my training and experience, I have gained a working knowledge and insight into the typical workings of criminal organizations. I have also gained extensive information as to the normal operational habits of persons who make their living as alien and narcotics smugglers. Through my training and experience and my conversation with other experienced criminal investigators, I have become familiar with the behavior, speech, routes and method of operations of criminal organizations, to avoid detection and apprehension by law enforcement officers.

9. Based upon my training and experience as a Border Patrol Agent, consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Alien smugglers will use cellular telephones and smart devices with messaging applications because they are mobile and they have instant access to telephone calls, social media application, and text and voice messages;

    b. Alien smugglers will use cellular telephones and smart devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    c. Alien smugglers and their accomplices will use cellular telephones and smart devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    d. Alien smugglers will use cellular telephones and smart devices to direct the alien smuggler drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

    e. Alien smugglers will use cellular telephones and smart devices to notify or warn their accomplices of law enforcement activity, and in particular USBP enforcement activity, to include the presence and posture of marked and unmarked units, as well as the operational status of USBP checkpoints; and

    f. Alien smugglers will often use cellular phones and smart devices to remotely guide illegal aliens who are crossing into the United States, providing them instructions as to where to go and what to do during a smuggling event. This is often done from over watch positions on high ground in Mexico or at the border fence. This allows smugglers to remotely control the actions of the smuggled aliens, while insulating themselves from criminal prosecution, which an alien

smuggling foot guide who was physically present in the company of the aliens would be exposed to.

FACTS SUPPORTING PROBABLE CAUSE

10. On January 27, 2018, an agent was performing line-watch operations within the Boulevard Border Patrol Station's Area of Responsibility (BLV/AOR). The BLV/AOR encompasses the towns of Boulevard and Jacumba, California and includes the area between Mile Marker 33 and Mile Marker 31 on Old Highway 80 near Jacumba. It is in an extremely common area for illegal aliens to be picked up by alien smugglers due to the rolling terrain making detection by law enforcement difficult.

11. At approximately 7:00 a.m., an agent followed footprints for approximately two individuals wearing "booties" towards an area known to Border Patrol Agents as "Weeping Buffalo," which is approximately 100 yards west of Mile Marker 32.5. "Booties" are pieces of thick carpet worn by illegal aliens in order to hide their foot-prints and from agents. Due to the rocky terrain and firm ground around Weeping Buffalo, the agent was unable to continue following the footprints.

12. At approximately 10:35 a.m., an agent broadcast via issued radio that he had observed individuals exit the brush near Mile Marker 32.5 on Old Highway 80, run and get into a black pick-up truck that was traveling westbound. Mile Marker 32.5 is approximately 1.5 miles west of Railroad Street in Jacumba, California.

13. Shortly after the agent broadcast his observations, an agent near Mile Marker 31 on Old Highway 80 observed one black pick-up truck pass him, traveling west-bound, followed by two sedans. The agent began following the vehicles, and overtook the two sedans and activated his emergency lights and sirens to perform a vehicle stop. The truck yielded, the agent approached the vehicle, and he observed three individuals sitting in the back seat, and three individuals sitting in the front seat.

14. The agent identified himself as a BPA in the English language and asked the front seat passenger, later identified as HERNANDEZ, as to his citizenship.

HERNANDEZ stated "U.S." SOLANO was the driver and the passenger in the front middle seat was later identified as SABRINA.

15. The agent then questioned the occupant in the passenger side rear compartment, later identified as Hermenegildo Santiago-Garcia (SANTIAGO) as to his citizenship in the English language. SANTIAGO stared at the agent with a blank look and did not appear to understand the question.

16. The agent then questioned SANTIAGO as to his citizenship in Spanish. SANTIAGO stated he was a citizen of Mexico. SANTIAGO initially stated that he had immigration documents, but after insisting to see them, SANTIAGO admitted to not having any immigration documents that would allow him to enter or remain in the U.S. legally.

17. An agent then questioned the middle seat passenger in the back seat, later identified as M.V. (a juvenile), as to her citizenship. M.V. stated she was a citizen of Mexico without any immigration documents that would allow her to enter or remain in the United States.

18. An agent then questioned the driver side passenger in the back seat, later identified as CUELLAR as to her citizenship. CUELLAR stated that she was a citizen of Mexico, without any immigration documents that would allow her to enter or remain in the United States.

19. Agents arrested SOLANO, SABRINA, and HERNANDEZ for transportation of certain aliens and CUELLAR and SANTIAGO for illegal entry. All six individuals in the vehicle were transported to the Boulevard Border Patrol Station for further processing and interviews.

20. **TT#1** and **TT#2** were seized from the front of SOLANO's vehicle. When the phones were processed by agents, HERNANDEZ, SOLANO, and SABRINA all disclaimed any ownership. A cursory search was performed. The U.S. Border Patrol is not relying upon, and asks the Court not to consider, anything the agents may or may not have found in this search of one of **Target Telephones**.

21. **TT#3**, **TT#4** and **TT#5** were seized from HERNANDEZ, SOLANO and SABRINA.

22. SANTIAGO, CUELLAR, and M.V. are being held as material witnesses. **TT#6** and **TT#7** were seized from the person of CUELLAR and M.V.

23. Agents *Mirandized* and interviewed HERNANDEZ. He stated he was working on a flooring job and carpeting job the past two days with SOLANO in El Cajon. HERNANDEZ stated he SOLANO, SABRINA's sister, drove to Jacumba the day before to pick up SOLANO's friend but he was not ready and they had gone back that day to pick him up. HERNANDEZ denied having anything to do with alien smuggling.

24. Agents *Mirandized* and interviewed SABRINA. She stated, the day before, SOLANO invited her on a trip to San Diego. She agreed and they left from Whittier, California at 4 a.m. that day, travelled to a casino in the San Diego area, and stayed at the casino for a few hours before driving to a gas station in Jacumba, California. SABRINA further stated, at the gas station, SOLANO asked her to move from the rear passenger seat to a front passenger seat because he had to pick up a friend, she did so, and then they drove and picked up the material witnesses, who she observed were sweaty.

25. Agents interviewed SANTIAGO and CUELLAR separately. They indicated that they travelled to the border from Mexico, met M.V. as they were crossing into the United States, and all three of them illegally entered the United States together by hiking through the mountains, came to a paved road, and were hitch hiking when a black truck stopped to pick them up, with the driver opening a passenger door for them. SANTIAGO and CUELLAR were unable to identify SOLANO, SABRINA, or HERNANDEZ from six pack photo arrays.

26. Agents also interviewed M.V. She said her family made arrangements to have her smuggled into the United States for $8000. She explained that she met SANTIAGO and CUELLAR at a house used for alien smuggling along the Mexico and United States border, they crossed into the United States together with SANTIAGO receiving directions by cell phone, they came to a road in the United States, and they hid in the bushes until

they received a call telling them to get into a black truck that was about to stop by the road. M.V. said a black truck stopped, they ran from the bushes and entered the truck, and a short time later Border Patrol stopped the vehicle.

27. Based upon my experience and investigation in this case, I believe that, the individuals named above as well as other persons as yet unknown, were involved in an on-going conspiracy in alien smuggling from Mexico into the United States. Based on my experience investigating alien smugglers, I also believe there is probable cause HERNANDEZ, SABRINA, SOLANO, CUELLAR, and VASQUEZ used the **Target Telephones** to coordinate with co-conspirators regarding , and in furtherance of, the smuggling of aliens, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, location data, messages and posts from social networking sites like Facebook, pictures and other digital information are stored in the memory of cellular telephones and smart devices which identify other persons involved in alien smuggling and illegal entry activities.

28. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the alien smuggling activities, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, location data, email messages, messages and posts from social networking sites like Facebook, pictures and other digital information are stored in the memory of the cellular telephone described herein.

## SEARCH METHODOLOGY

29. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

30. Following the issuance of this warrant, I will collect the subject cellular telephones and subject it to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

31. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

32. Based on the facts contained in this affidavit and my experience and training, I submit that there is probable cause to believe that the **Target Telephones,**

contain evidence of violations of Title 8, United States Code Section 1324. Consequently, based on the probable cause discussed above, I specifically request authority to search the items described above and in listed Attachment A and seize the items listed in Attachment B.

_____
Jason Chuba
BORDER PATROL AGENT

SUBSCRIBED AND SWORN TO BEFORE ME THIS 27 DAY OF February

_____
HON. MITCHELL D. DEMBIN
UNITED STATES MAGISTRATE JUDGE